**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | |
|---|---|
| THERESA ANN VANPELT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:16-cv-01876-SGC |
| | ) |
| SOCIAL SECURITY ADMINISTRATION, COMMISSIONER, | ) ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff Theresa Ann Vanpelt appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (Doc. 1). Plaintiff timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons stated below, the Commissioner's decision is due to be remanded.

**I.     FACTS, FRAMEWORK, AND PROCEDURAL HISTORY**

Plaintiff was forty-eight years old at the time of her alleged onset date. (R. 125). She attended four or more years of college and previously worked as an aerospace engineer and a systems engineer. (R. 28, 160, 170). These jobs are classified at the sedentary and skilled level. (R. 28, 62). Plaintiff claimed an onset date of May 16, 2014, and stated she had not engaged in substantial gainful activity ("SGA") since that time. (R. 21, 125).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920;

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 10).

*Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination whether the claimant is performing SGA. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in SGA, he or she is not disabled and the evaluation stops. *Id*. If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, Administrative Law Judge Lori J. Williams ("ALJ") found Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. 21). At step two, the ALJ found Plaintiff suffered from the following severe impairments: major depressive disorder; posttraumatic stress disorder ("PTSD"); an anxiety disorder; and an eating disorder. (R. 21-22). The ALJ specifically found no physical impairments. (R. 22).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments. (R. 22-23). Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> She can perform simple routine tasks requiring no more than short simple instructions and simple work related decision making with few work place changes. She can have occasional interactions with co-workers and supervisors and no interactions with members of the general public.

(R. 24).

At step four, the ALJ determined Plaintiff was unable to perform any of her past relevant work. (R. 28). Because the Plaintiff's RFC did not allow for the full range of work, the ALJ relied on the testimony of a vocational expert ("VE") in finding a significant number of jobs in the national economy Plaintiff can perform. (R. 29). The ALJ concluded by finding Plaintiff was not disabled at the fifth step. (R. 29-30).

## II.   STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court

gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

Plaintiff argues the ALJ's decision should be reversed and remanded because: (1) the ALJ failed to properly evaluate the credibility of the Plaintiff's allegations of pain; and (2) the ALJ failed to properly articulate good cause for according less weight to the opinions of

4

Plaintiff's treating and consulting psychiatrists. (Doc. 13 at 4-13). Because the second issue is sufficient to require remand, the court does not address Plaintiff's first argument.

The opinion of a claimant's treating physician is entitled to substantial or considerable weight absent a showing of good cause to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Failure to articulate the reasons for giving less weight to the opinion of a treating physician is reversible error. *Id.* Good cause exists where a treating physician's opinion: (1) is not supported by the evidence; (2) is contradicted by the evidence; or (3) is conclusory or inconsistent with the doctor's own medical records. *Phillips*, 357 F.3d at 1240-41.

"Generally, a treating doctor's opinion is entitled to more weight than a consulting doctor's." *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984). Reports from a claimant's long-time treating physician are particularly probative. *Chester v. Bowen*, 792, F.2d 129, 131 (11th Cir. 1986). Conversely, a one-time examiner's opinion is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). While the ALJ can "reject the opinion of any physician when the evidence supports a contrary conclusion . . . the ALJ is required [] to state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). Furthermore, the ALJ must explain why an opinion is inconsistent with the medical record; he or she cannot simply make a conclusory pronouncement that the opinion is inconsistent with evidence of record. *See Bell v. Colvin*, No. 15-0743, 2016 WL 6609187 at *4 (M.D. Ala. Nov. 7, 2016).

The ALJ rejected the opinion of Plaintiff's treating psychiatrist for various reasons stated throughout her opinion. She found Dr. Alrefai's opinion that Plaintiff "meet[s] listings 12.04 and/or 12.06 with 'marked' functional limitations, contrast[s] sharply with his own treatment notes which document no more than 'moderate' symptoms and severity of symptoms at 3/10 with 10 being severe, good insight and judgment, normal thought content, etc., with no change noted throughout the treatment records." (R. 27). The ALJ also noted "long breaks in the claimant's treatment from 2008 to 2014" and the infrequency with which Plaintiff sees Dr. Alrefai, opining every three months "is not indicative of someone with a serious mental illness." (R. 25).

The medical records show a long history of psychiatric care. Beginning in 2007, Plaintiff was treated by Dr. Budd for major depression and anxiety disorder. (R. 242-271). The last recorded treatment from Dr. Budd was dated in February of 2008, after which time Plaintiff moved to Alabama. (R. 242). After moving to Alabama, the Plaintiff began treatment with Dr. Alrefai in May 2008. (R. 294). Contrary to the ALJ's assertion, the record shows Plaintiff consistently treated with Dr. Alrefai from 2008-2015. (R. 272-296, 376-384, 385-386, 388-399, 402-485). While it is true Plaintiff's visits decreased between the second half of 2008 and 2011, Plaintiff was seen by Dr. Alrefai at least seven times in 2012 and five times in 2013. (R. 423-41, 409-21). She was only seen four times in 2014, but in January 2014, Plaintiff began seeing Ms. Bosworth at Crisis Services of North Alabama on a weekly basis. (R. 280-86, 392-93, 403-06). These weekly sessions continued until at least April 2016.[2] (R. 392-93). Plaintiff was seen by Dr. Alrefai at least seven times in 2015. (R. 263-280, 288-93, 375-90).

---

[2] Despite her consistent treatment, Plaintiff's condition did not improve as evidenced by her hospitalization on November 3, 2015, for a suicide attempt. (R.326).

Additionally, the medical records support Dr. Alrefai's conclusions. Plaintiff was consistently treated for PTSD, severe depression, anxiety, social anxiety disorder, and an eating disorder. Her treatment included numerous psychotropic medications. The records consistently note Plaintiff's mood as anxious and document a spectrum of symptoms ranging in severity from 2/10 to 5/10, with zero being none and ten being severe, and overall functioning ranging from 4/10 to 6/10, with zero being poor and ten being excellent. For example, in November 2013, Plaintiff was noted to being doing "ok," but her mood was recorded as anxious. (R. 408, 410). In February 2014, Plaintiff was noted to have severe anxiety and sleep disturbance, her mood was anxious, and her affect was constricted. (R. 406, 407). In treatment notes from April, June, and November 2014 and May 2015, Plaintiff's mood was similarly documented as anxious. (R. 284, 287, 290, 404). In July 2015, medical records reflect Plaintiff was tearful and she had not been able to work. (R. 276). In November 2015, Plaintiff was hospitalized for a suicide attempt. (R. 326-27).

To be sure, Dr. Alrefai's notes did show improvement during some periods of time throughout his treatment of Plaintiff. But notes of Plaintiff's improvement were just as often interspersed with indications of decline. Some symptoms seemed to respond to medication, while some other symptoms stayed the same or worsened. This objective medical evidence does not counter the conclusions of Dr. Alrefai, and no other good cause has been stated by the ALJ for affording little weight to his opinion. *See Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985) (reversing a decision in which the ALJ rejected uncontradicted opinions from two examining physicians finding that claimant was totally disabled). Moreover, to the extent Dr. Alrefai relied on Plaintiff's subjective complaints, he was entitled to do so, and doing so "hardly undermines [his] opinion as to [the patient's] functional limitations, as a patient's report of

7

complaints, or history, is an essential diagnostic tool." *Hall v. Astrue*, 2011 WL 4635028 at *15 (N.D. Fla. Aug. 31, 2011) (internal citations omitted).

Even more telling is that Dr. Smith, the consulting physician for the Commissioner, agreed with Dr. Alrefai that Plaintiff's ability to maintain gainful employment is severely impaired. (R. 318). Nevertheless, the ALJ afforded the opinion of Dr. Smith little weight because "her opinion is inconsistent with her own evaluation and objective observations, which was for essentially normal interactions and cognition, except for noting her mood was depressed and she was tearful." (R. 26). The ALJ's "finding in this regard is based on a . . . selective review of the record." Burroghs v. Massanari, 156 F. Supp. 2d 1350, 1364 (N.D. Ga. 2001).

Because the ALJ did not afford proper weight to the opinions of Drs. Alrefai and Smith, the Commissioner's decision is due to be reversed and remanded. *See Gulsby v. Barnhart*, 430 F. Supp. 2d 1251, 1253 (S.D. Ala. 2005) (reversing an ALJ's denial of benefits for "[e]ssentially . . . reject[ing] all of these [medical] opinions or conclusions though they collectively lead to the conclusion that [the p]laintiff has a severe mental impairment"); *Freeman v. Schweiker*, 681 F.2d 727 (11th Cir. 1982) ("[T]he ALJ engaged in what has been condemned as 'sit and squirm' jurisprudence. In this approach, an ALJ who is not a medical expert will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing. If the claimant falls short of the index, the claim is denied.").

## IV. CONCLUSION

Upon review of the administrative record and the briefs of the parties, the court finds the Commissioner's decision is not supported by substantial evidence and did not apply the correct legal standards. Accordingly, the Commissioner's decision is due to be reversed and remanded for further consideration. A separate order will be entered.

**DONE** this 8th day of March, 2018.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE